Garland Contreras v. Garland The next case is 23-60325 Contreras v. Garland. Mr. Miller. May it please the Court. I am Ross Miller, and along with my co-counsel, Ezenay Okoko, I represent the petitioner in this case, Estela Guadalupe Sanchez Contreras. Your Honors, Petitioner respectfully requests that this Court reverse the Board's decision denying her relief applications for two reasons. First, because the agency committed reversible legal error by ignoring key evidence in the record. And second, because the agency also committed reversible legal error by applying an unduly burdensome standard of proof to her petitioner's withholding of removal claim. Now, Your Honors, regarding the first point, the Supreme Court's decision in Wilkinson v. Garland from earlier this year has impacted this case. The government previously argued that this Court was barred from reviewing petitioner's hardship challenge. However, Wilkinson forecloses this position, as the government recognizes in its initial 28-J filing withdrawing its jurisdictional arguments. The government also claims in its initial 28-J filing that, post-Wilkinson, hardship determinations are to be reviewed under the substantial evidence standard. But the Supreme Court did not address this specific point in Wilkinson, and instead simply noted that these determinations are to be reviewed under a deferential standard. But, Your Honors, even if this Court determines that substantial evidence review is proper, this Court in the 2023 case, Argueta-Hernandez v. Garland, reversed the Board's determination that an applicant was ineligible for withholding of removal under substantial evidence review after it concluded that the agency ignored key evidence of the record. And that's exactly what happened in this case, Your Honors. And that brings me to my first point. The agency committed reversible legal error by ignoring key hardship evidence in the record to deny petitioner's cancellation of removal claim. Specifically, the petitioner testified on page 154 of the record that if she were removed to El Salvador, her U.S. citizen son, an asthmatic, would be deprived of health care. In the immigration judge's decision finding that there was no hardship for cancellation of removal purposes, the immigration judge notes twice that petitioner testified that her U.S. citizen child would have access to adequate health care. Petitioner also testified that if she were removed and her son were forced to accompany her to her native El Salvador, that it was possible he could be targeted by criminal gangs who would try to recruit him to illicit purposes. The agency's decision at the immigration court level and at the Board makes no reference of this evidence. This is reversible legal error under the agency's own precedent because all hardship evidence must be considered in the totality. That's the Board's 2001 case, Matter of Monreal. And this is the standard, Your Honors, because while pieces of individual hardship evidence may not meet the exceptional and extremely unusual hardship standard, cumulatively, those pieces of evidence can add up and in the aggregate it can meet that standard. Now, had the agency properly considered all of petitioner's hardship evidence in the totality, it would have concluded that her hardship evidence was indeed compelling. Petitioner is a single parent and her U.S. citizen child enjoys no financial or emotional support from his biological father. Petitioner also testified that if she were removed to El Salvador, she would suffer severe economic and employment, a lack of economic and employment opportunities, which she enjoys in the United States. She further testified that her son would experience diminished educational opportunities, that he would not have access to adequate health care in her country of origin, and again, that petitioner's son could become the target of illicit criminal actors in El Salvador. All of this evidence in the totality demonstrates exceptional and extremely unusual hardship had the agency actually conducted the proper totality of the circumstances analysis. We know that based on the Board's own precedent in the 2002 case, Matter of Resinas, there the agency found that the hardship element for cancellation purposes had been satisfied. And it did so specifically after noting that the non-citizen parent there who had four U.S. citizen children, that she was a single parent. She enjoyed no financial or emotional support from the children's biological parent, just like petitioner in this case. The agency in Matter of Resinas also made specific note of the fact that the children there knew no other way of life. They were only experienced with the United States. And again, this is a factor as well in petitioner's case. Her U.S. citizen child has been born and raised in the United States. And both Matter of Resinas and Matter of Montreal direct adjudicators to pay specific attention to a variety of pieces of evidence, including the age, health, and circumstances of the qualifying family member. While qualifying family members don't have to suffer from a catastrophic health problem or malady in order to meet that standard, the health aspect is critically and chiefly important in the totality of the circumstances analysis. And again, here, the agency impermissibly diminished the weight of petitioner's hardship evidence by mischaracterizing her testimony, her testimony which the agency itself deemed to be credible. Now, the immigration judge could have determined that that testimony wasn't credible. The immigration judge could have given less weight to specific aspects of her testimony. And indeed, the judge did that as her testimony relates to whether or not her U.S. citizen child would accompany her to El Salvador. Initially, she testified that she wasn't sure if he would accompany her. And then she later said he would. And the judge gave limited weight to that specific aspect of her testimony. But the immigration judge never gave limited weight to her testimony that her son would be deprived of adequate access to health care if he were to accompany her to El Salvador. The immigration judge also, post Real ID Act of 2005, could have required the applicant to provide documentary evidence or further corroborating evidence demonstrating that her son wouldn't have access to adequate health care in El Salvador. But the judge didn't require that either. Instead, the immigration judge said, your testimony on this point is credible. I believe it. Despite that testimony, I'm going to enter a finding to the contrary with no reference whatsoever to any evidence of the record. And again, this is reversible legal error, because clearly the totality of circumstances was not adequately reviewed. All hardship evidence wasn't reviewed in the aggregate, as the agency's own precedent has long required. So your Honor's petition— I guess I'm a little bit confused by what you're telling me. I thought you told me that there was a statement that said that the child would have access to adequate health care. No, your Honor. Her statement, petitioner's statement on page 154 of the record, was that he would not have. Would not. Correct. I thought you said the judge found that he would. That's correct, your Honor. That's what the judge found. Despite her testimony, which is the only evidence— But now I thought you were telling me the judge ignored her testimony. But now you're saying the judge just said there was, so the judge made a mistake. Explain to me what you think happened. Sure. I completely understand your position, your Honor. The judge entered a finding of fact that ignored her testimony. The finding of fact was that the child would have access to health care in El Salvador if he were— Fighting her testimony that the child— Correct, your Honor. Correct. And there's no reference in the immigration judge's oral decision indicating where that contrary finding could have been located. Again, the judge could have concluded that the testimony wasn't credible and he wasn't going to credit that testimony. The judge could have said, you have to have further corroborating evidence to support that position. The judge didn't require that. Instead, the judge simply said, your testimony on that point is credible, but despite that credibility finding, I believe that your child will have adequate access to health care. And again, that diminishes the overall hardship evidence that Petitioner was able to prefer before the agency, constituting a reversible legal error. Was there also testimony that despite his asthma, the child was able to participate in soccer and other sports in school and that his asthma was controlled with medication? Yes, your Honor. There was testimony that he suffers from asthma attacks every year and that he participates in swimming activities, which his treatment team recommends in order to build up the strength of his lungs. That testimony is certainly in the record, but her direct testimony on the question of whether or not he's going to be able to continue to benefit from that type of treatment and that type of treatment plan was that he wouldn't. He wouldn't have that access in her country of origin. And that's what the immigration judge ignored. Wouldn't have access to what? Medication or a doctor? Well, the statement is he wouldn't have access to adequate health care, your Honor. We don't know which one. We don't really know, your Honor. And even in the government's brief on this point, they note that we don't really know what the immigration judge was specifically referring to on that point. It's not clear. And that's another reason. What was the mother referring to when she said he wouldn't have access? Access to health care. It was a simple question. It wasn't developed further. Well, that's fairly conclusory. I mean, are there any other details? No, your Honor. And again... He's ignoring a conclusory statement when there's, I assume, evidence that he would have access to health care. Well, the statement again, your Honor, could be determined to be conclusory by the immigration judge. And the judge can say, I'm not going to credit that part of your testimony. Instead, I find that there's other evidence in the record that demonstrates to the contrary, or I'm going to require you to provide that documentary evidence. Under Real ID, the immigration judge has the authority to do that. The judge did neither. Instead, the judge said, your testimony on this point is credible. And despite that credible advice that she testified or she stated, that her son would have adequate access to health care. And that's simply not her testimony. It's not the testimony that the immigration judge deemed to be credible either. And your Honors, that brings me back to my second point. And that is that the agency also committed reversible legal error by applying an unduly burdensome standard of proof to petitioner's withholding of removal claim. Now, in finding that petitioner failed to establish her eligibility for withholding, the immigration judge determined that she failed to show she suffered past persecution or that there was a substantial likelihood that she would suffer persecution in the future on account of a protected ground, namely her familial ties. Now, regarding the first point of error on past persecution, the immigration judge simply concluded that neither petitioner nor her family members were ever physically harmed in El Salvador by their tormentors, members of the MS-13 criminal gang. And as a result, she couldn't establish past persecution. But actual physical harm is not required to establish past persecution. This court recently recognized that in Argueta Hernandez. And it's recognized that before in a multitude of other cases, past persecution can be established by the severe deprivation of economic or employment opportunities, by threats, confinement, or the deprivation of other essentials of life. Actual physical harm is not required. And this court also recognized in the 2008 case Venturini v. Mukasey, that the agency commits reversible legal error if it doesn't consider all evidence establishing past persecution in the totality. Because once again, similar to the cancellation of her... Doesn't she have to show a causal nexus between any persecution, a causal nexus between that and her membership in a particular social group? Absolutely, Your Honor. That's another element of the claim. And that's another element that the immigration judge found to be lacking. The judge determined that the reason she, petitioner, was being targeted and that her family members were being targeted was because of the gang's motivation to increase their financial resources. And not because she was a member of a particular social group. Correct, Your Honor. And the record simply doesn't support that conclusion. And we know that because after petitioner fled for the safety and security of the United States, she would continue to be threatened and harassed by the criminal gang members who had threatened her parents back in El Salvador. And they specifically told her, if you don't pay this protection tax, your parents are going to end up in a trash bag. So if you remove the family ties from the equation, there is no persecution of this petitioner in this case. But the motivation is still money. It can be in part, Your Honor. That can be part of the motivation. But why is this particular petitioner being targeted? It's the family ties. For money? For money, but for the family ties. Your Honor, this isn't a simple gang extortion case where you have an individual who's a vendor in El Salvador who's being targeted because that person's making money and the gangs are going to try to extort that individual. Instead, this petitioner is being targeted, again, because of the family ties. If you remove the family ties from the equation, there is no persecution of this petitioner. She would have never been targeted after she came to the United States. And the requirement is, under the one central reason nexus standard, the protected ground can't be incidental, tangential, or subordinate for another non-protected reason for the harm. And she meets that standard, again, because if that family relationship didn't exist, she would have never been targeted after she came to the United States. And we briefly make a point about the nexus standard. I know this Court has already held in the 2021 case, Vasquez-Guerra v. Garland, that one central reason applies to both nexus for withholding of removal and asylum. But for purposes of preserving this argument for further appeal, we can continue to maintain that it is the lower a reason nexus standard that governs nexus in the withholding context. That's what the Ninth Circuit has recognized in the 2017 case, Barajas-Romero v. Lynch. And it's what the Sixth Circuit has also recognized in the 2020 case, Guzman-Vasquez v. Barr. Thank you, Your Honors. Good morning. May it please the Court, Brendan Hogan for the government. I'll address the cancellation case first. It is true, Provost Wilkinson, that this Court has the authority to review the application of undisputed facts to the hardship standard. But I believe what my colleague misapprehends is that it still lacks jurisdiction to review an immigration judge's underlying facts. So, for example, with the health care issue that was brought up, the problem here is that at page 154 of the record, prior counsel asked a compound question, which was very inartful, which was first he asked, do you think your child will get appropriate health care in your country, paused, and then rephrased it as, do you think your child will not get appropriate health care in your country? Petitioner responded, yes. There were no follow-up questions. Counsel never sought to clarify. Then, before the Board of Immigration Appeals and the administrative brief, they never raised the issue. It's the only reference to health care for the child in the record at all. The immigration judge was not required to ask for additional corroboration. For the cancellation of removal, under this court's precedent or the agency's precedent, it's clear the petitioner has the burden to submit the hardship evidence. And if it's there, like, why wouldn't you? And I think the fact that, in this case, Petitioner's counsel did not submit any evidence regarding health care supports the immigration judge's ultimate conclusion is that he would, thankfully, receive adequate health care in his country. And as Your Honor pointed out, he does have asthma, but he's participating in multiple sports multiple times a week, and thankfully, he's in good health. Turning to the other issues raised by counsel about Petitioner being a single mother, her income, employment opportunities, that was all mentioned in the agency's decision. And the immigration judge addressed all those. Those are underlying facts that cannot be reviewed. Now, whether those facts, as found by the immigration judge, satisfy the hardship standard, this court surely can review. But under agency precedent, nothing here shows that Petitioner's qualifying relative would experience hardship that is substantially beyond what would ordinarily result when a petitioner was removed from this country. And then finally, to counsel's point that the immigration judge ignored evidence that the son would experience harm by gang members in El Salvador, she really didn't get into that either. There's one sentence in the written statement, and there's this one comment, I believe it's at page 188 of the record, where she just says, I think my son would be extorted. There really wasn't much there for the immigration judge to consider, and in any event, under agency precedent, adverse country conditions in and of itself, it's not enough to show the requisite hardship. Turning to the application for withholding of removal, the agency certainly did not require that a petitioner cannot show they're eligible for relief unless they have physical harm. Their point was, if you look at the facts of this case, it is so tenuous that in 2000, Petitioner's father received a written note saying, and as your Honor pointed out, everything here is motivated by money and only money. In 2000, he received a note saying, you're going to pay us or else. And then at one point, gang members approached Petitioner in the year 2000. They were visibly armed, but they said, your father knows what to do. The father paid them. They left them alone for the next several years. Petitioner came to the United States. Eventually, her siblings came to the United States. In 2007, she received a phone call saying, if you do not pay us, we're going to harm your parents. It was the only motivation given at all. She paid for several years, and eventually she said, I'm not going to pay you anymore. And they responded, you are going to suffer the consequences or you're going to pay for it if you ever come back. From 2015 onwards, they've never contacted Petitioner. They have not contacted any of the relatives that remain in El Salvador, including her parents, which suggests the only motivation was money. But on top of that, the threats that she experienced only in 2000 and 2015 were not so imminent and menacing that they would rise to the level of persecution. And the fact that they have not contacted anyone in the family since 2015 shows that there's no clear probability of future persecution in this case. I apologize. Does the panel have any additional questions? The government will rest. Thank you. Good morning, Your Honors. May it please the Court, I'm Isenay Okoko, and I, too, represent Petitioner. I'll go straight into the government's arguments. Your Honors, the government's arguments for affirmance fail for two reasons. First, because the agency committed legal error by failing to consider Petitioner's hardship evidence in the totality. And second, because the record compels the conclusion that Petitioner established her eligibility for withholding of removal. The government argues that we are asking the Court to make a factual finding and that's incorrect. We are not asking the Court to make or to review the Board's factual finding. When evidence is disregarded or left out in a cancellation claim, that is a due process violation, because all hardship evidence is to be considered in the totality. And that is what the Board did here. The Board left out evidence that was already presented to the Board, which is the unavailability of adequate health care in El Salvador. I would correct the phrase that the government said, and that's in the record on page 154. Mine needs a flip to it. What's the evidence of the unavailability of health care in El Salvador? What's the evidence that was put into the record that you said? First of all, the question that was asked to Petitioner was, and I would read that, what do you think about health care? Do you think he will have, the counsel stopped, he will be deprived of health care? The counsel never finished the first question, but switched it up to be very clear and said, do you think he will have, he will be deprived of health care? And she responded, yes. And the judge found that evidence, that testimony credible. The documentary evidence in this case also shows that public hospitals are overcrowded, patients are not seen timely. It also states that pharmacies sometimes do not have medications. It states that the U.S. Embassy has stated that the Salvadoran health care is substandard. Petitioner's child suffers from asthma. And all this evidence, all this documentary evidence is in the record, and it corroborates her credible testimony that her child will be deprived of health care. Now the health, the board in Mater of Racinas has stated that in deciding cancellation of removal cases, courts should consider the age, health, and circumstances of the qualifying relative, including how a lower standard of living and adverse country conditions would affect that qualifying relative in the noncitizen's home country. In this case, the agency did not consider the unavailability of adequate health care for petitioner's 9-year-old child, and the agency did not consider the adverse country conditions in El Salvador. And those were left out of the cumulative hardship in this case. Therefore, the board violated petitioner's due process rights by leaving out credible evidence that goes towards the hardship, and the board committed legal error. By failing to consider all hardship evidence, the board clearly did not consider all hardship evidence in the totality. And that is the standard that the board has set for itself, and it failed to meet that standard. So the board clearly did not apply the appropriate legal standard to the facts in this case. The government also says that petitioner stated concerning adverse country conditions that she believed her son would be extorted. No, she said she believed her son would be taken. And that is clear that she is concerned. That's clear testimony that the adverse country conditions would affect the child in El Salvador. I would go straight to past persecution, because I only have one minute left. The government says that petitioner was threatened twice in 2007 and 2015, but that's not what the record says. Petitioner paid, made several payments. In fact, the first instance of the phone call from the leader of the gang in El Salvador to her requesting money, he told her what her mother was putting on, what her mother was doing, and petitioner had her sister who was with her call her mother, and the mother confirmed that that was what she was doing. Petitioner made several payments to the gang, $100, and it kept increasing until it got to $2,000, and she could no longer make the payment. And that was when the leader of the gang told her that if she ever returns to El Salvador, she would pay for her failure to comply with his demands. This court in Venturini v. Mukasey stated that a noncitizen can establish past persecution through the cumulative effect of multiple threats and harms. Also, the harm need not be physical to constitute persecution, as this court found last year in Agueda Hernandez v. Garland. In this case, petitioner's cumulative harm that she suffered clearly established past persecution, and having established that, she is entitled to a presumption that in the event she is forced to return to El Salvador, her life of freedom would be threatened. And the government has not rebutted this presumption. Petitioner's own testimony states that the particular gang leader who threatened her has not been apprehended. If I may quickly conclude, Your Honor, we request that the board vacate the agency's erroneous decision in this case and remand for the agency to consider all hardship evidence in the totality, as well as consider her withholding claim, applying this court's precedents on all issues. Thank you, Your Honor. Thank you, Counsel. That will conclude the arguments. The cases we've heard are under submission. Thank you.